IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

**CHARLES MICHAEL CARTER,**

    **Plaintiff,**

**vs.**　　　　　　　　　　　　　　　　　　　　　　　　**CIVIL ACTION NO. 5:21-CV-00084**

**KILOLO KIJAKAZI, ACTING
COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Acting Commissioner of Social Security denying the Plaintiff's applications for Child Disability Benefits (CDB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 402(d), 1381-1383f. By Order entered February 4, 2021 (ECF No. 3), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are Plaintiff's Brief in Support of Judgment on the Pleadings and Defendant's Brief in Support of Defendant's Decision. (ECF Nos. 11, 12)

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the United States District Judge **GRANT** Plaintiff's request to the extent he asks for remand (ECF No. 11); **DENY** Defendant's request to affirm the decision of the Commissioner (ECF No. 12); **REVERSE** the final decision of the Commissioner; and **REMAND** this matter back to the Commissioner for further proceedings for the reasons stated *infra*.

**Procedural History**

The Plaintiff, Charles Michael Carter, (hereinafter referred to as "Claimant"), protectively filed his applications on November 27 and 28, 2018 alleging disability since June 1, 2007 because of a brain shunt, scoliosis, heart problems, a lazy eye, a learning disability, kidney problems, and allergies (Tr. at 12, 202, 241). His claims were initially denied on March 20, 2019 (Tr. at 112-116, 117-121) and again upon reconsideration on November 19, 2019 (Tr. at 130-136, 137-143). Thereafter, Claimant filed a written request for hearing on December 9, 2019 (Tr. at 144-146).

An administrative hearing was held on June 23, 2020 before the Honorable Michael Carr, Administrative Law Judge ("ALJ") (Tr. at 30-57). On July 17, 2020, the ALJ entered an unfavorable decision (Tr. at 9-28). On September 9, 2020, Claimant sought review by the Appeals Council of the ALJ's decision (Tr. at 198-201). The ALJ's decision became the final decision of the Commissioner on December 1, 2020 when the Appeals Council denied Claimant's Request for Review. (Tr. at 1-6)

On February 2, 2021, Claimant timely brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (ECF No. 2) The Defendant (hereinafter referred to as "Commissioner") filed an Answer and a Transcript of the Administrative Proceedings. (ECF Nos. 8, 9) Subsequently, Claimant filed a Brief in Support of Judgment on the Pleadings (ECF No. 11), in response, the Commissioner filed a Brief in Support of Defendant's Decision (ECF No. 12). Consequently, this matter is fully briefed and ready for resolution.

**Claimant's Background**

Claimant had not attained 22 years old as of the alleged onset date and is considered a "younger person" throughout the underlying proceedings. See 20 C.F.R. §§ 404.1563(c),

416.963(c). (Tr. at 14, 22) Claimant graduated high school while attending special education classes, and subsequently obtained additional training in culinary school. (Tr. at 242) Claimant has never worked. (Tr. at 241, 242)

**Standard**

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims, 20 C.F.R. §§ 404.1520, 416.920. If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. §§ 404.1520(f), 416.920(f). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).

The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform

other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. Id. §§ 404.1520(g), 416.920(g). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration ("SSA") "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a), 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment.

Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in Sections 404.1520a(c) and 416.920a(c). Those Sections provide as follows:

> (c) *Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Understand, remember, or apply information;

interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. See 12.00E of the Listings of Impairments in appendix 1 to this subpart.
  (4) When we rate the degree of limitation in the first three functional areas (understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself), we will use the following five-point scale: None, mild, moderate, marked, and extreme. The last point on the scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. Id. §§ 404.1520a(d)(1), 416.920a(d)(1).

Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. Id. §§ 404.1520a(d)(2), 416.920a(d)(2).

Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the claimant's residual functional capacity. Id. §§ 404.1520a(d)(3), 416.920a(d)(3). The Regulations further specify how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

Id. §§ 404.1520a(e)(4), 416.920a(e)(4).

**Summary of ALJ's Decision**

In this case, the ALJ found Claimant had not attained age 22 as of June 1, 2007, the alleged onset date. (Tr. at 14, Finding No. 1) At the first step, the ALJ determined that Claimant had not engaged in substantial gainful activity since the alleged onset date. (Id., Finding No. 2) At the second inquiry, the ALJ found that Claimant had the following severe impairments: status-post spinal fusion with shunt; scoliosis; amblyopia of the left eye; borderline intellectual functioning (BIF); and oppositional defiance disorder. (Tr. at 15, Finding No. 3) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id., Finding No. 4) The ALJ then found that Claimant had the residual functional capacity ("RFC") to perform light work except he can:

> occasionally climb ramps and stairs, balance, stoop, kneel, and crouch, but he cannot climb ladders, ropes, or scaffolds or crawl. The claimant can tolerate frequent exposure to extreme cold, wetness, and vibration. The claimant cannot work at unprotected heights, operate a motor vehicle for commercial purposes, operate hazardous machinery, or work along conveyor belts or assembly lines. The claimant can perform simple, routine, repetitive tasks, make very simple decisions, and requires a work environment with minimal change.

(Tr. at 18, Finding No. 5) At step four, the ALJ found Claimant has no past relevant work. (Tr. at 22, Finding No. 6) However, in addition to the immateriality of the transferability of job skills, based on Claimant's age, education, work experience, and RFC, the ALJ determined that Claimant is capable of performing other jobs that exist in significant numbers in the national economy. (Tr. at 22-23, Finding Nos. 7-10) Finally, the ALJ determined Claimant had not been under a disability since June 1, 2007 through the date of the decision. (Tr. at 24, Finding No. 11)

**Claimant's Challenges to the Commissioner's Decision**

Claimant argues that the ALJ's decision is not supported by substantial evidence because Claimant's mental impairments meet or equal the criteria set forth in Listings 12.05 and 12.08. (ECF No. 11 at 2). Claimant points to the psychological reports from Wyoming County Schools that show he has marked limitations that meet Listing criteria (Id. at 2-4). Claimant also contends that the record before the ALJ was incomplete, as Exhibits 1F and 6F are not included in the transcript (Id. at 4-5). Claimant asks for reversal with an award for benefits, or for remand (Id. at 5).

In response, the Commissioner asserts that Claimant was not *per se* disabled under Listings 12.05 or 12.08, and substantial evidence supported the ALJ's finding that he only had mild to moderate limitations in each of the four broad areas of functioning. (ECF No. 12 at 7-11) Additionally, despite Claimant's argument otherwise, the Commissioner contends that the ALJ weighed the conflicting evidence of record to arrive at his conclusions, and this Court should decline Claimant's invitation to reweigh the evidence. (Id. at 11) Further, the ALJ did not rely on the exhibits identified by Claimant, and they were appropriately removed from the record as they pertained to another individual; Claimant does not explain why the ALJ erroneously relied on those exhibits in his decision (Id. at 11-12). Finally, the Commissioner contends that substantial evidence supported the ALJ's decision and asks this Court to affirm. (Id. at 12)

**The Relevant Evidence of Record**[1]

The undersigned has considered all evidence of record pertaining to Claimant's arguments and discusses it below.

Summary of Claimant's Background/Activities:

---

[1] The undersigned focuses on the relevant evidence of record pertaining to the issues on appeal as referenced by the parties in their respective pleadings.

Claimant reported that he lived in a house with his family (Tr. at 256). His activities included helping his mother pack his father's lunch, folding clothes and hanging them after his mother washed them, drying dishes and putting them away, cleaning his room and his bathroom, and taking care of his dog (Tr. at 257). He had no problems with his personal care activities (Id.). He was unable to drive because he could not pass the learner's permit test, but went to stores with his mother and assisted her with shopping (Tr. at 259). His hobbies and interests included watching television, playing on his phone, and doing things with his family (Tr. at 260). He socialized online and at church, attended 4-H meetings, and went with family friends to do religious mission work (Tr. at 260, 263). He had no problems getting along with family, friends, neighbors, or authority figures (Tr. at 261-262). He was able to finish what he started, and he handled stress and changes in routine "ok" (Id.).

Summary of Medical Evidence:

On August 12, 2010, Claimant underwent a psychological evaluation and testing with Mari Sullivan Walker, M.A. (Tr. at 344-350). During the evaluation, Ms. Walker observed that Claimant was restless and fidgety, and that he stood up multiple times, though he was cooperative with an euphoric mood and congruent affect. (Tr. at 346) She noted his concentration was mildly deficient, his immediate memory intact, and recent memory was impaired as he could recall zero out of four items after a thirty-minute delay. (Id.) Ms. Walker administered the Wechsler Intelligence Scale for Children-Fourth Edition and reported that Claimant achieved a full-scale IQ score of 63, with a perceptual reasoning score of 53, working memory and processing speed score of 68, and verbal comprehension score of 85 (Tr. at 345). Ms. Walker noted that based on his verbal comprehension score, Claimant will experience some difficulty in performing tasks

involving the application of previously learned material to reasoning tasks; his perceptual reasoning score indicated he would experience extreme difficulty in performing tasks involving the use of visual memory in applying memory to problems; his working memory score indicated that he would experience extreme difficulty with short-term memory; and his processing speed score indicated that he would experience difficulty in performing tasks involving clerical type jobs, specifically those on a time limitation. (Tr. at 347-348)

Ms. Walker also administered the Wide Range Achievement Test-Fourth Edition (WRAT-4): Claimant's word reading score indicated that he will experience difficulty in performing tasks involving the recognition of many commonplace words; and his sentence comprehension score suggested that he would experience difficulty in performing tasks involving spelling. (Tr. at 349)

Claimant's primary diagnosis was oppositional defiant disorder, and mild mental retardation (provisional). (Id.). His prognosis was listed as poor, as he exhibited a number of symptoms of concern. (Tr. at 350)

On June 19, 2012, Claimant's primary care physician reported that his orientation, memory, attention, language, and fund of knowledge were normal (Tr. at 426).

On May 1, 2014, a special education eligibility report noted that Claimant had a full-scale IQ score of 60, placing him in the extremely low range (Tr. at 217, 357). His processing speed and perceptual reasoning scores were extremely low, his working memory score was borderline, and his verbal comprehension score was low average (Tr. at 217, 358).

At the Commissioner's request, Claimant underwent a consultative psychological evaluation with Katherine Marshall, M.S., on March 11, 2019 (Tr. at 514-520). Claimant reported that he had difficulty with comprehension and received special education in school (Tr. at 515).

He graduated from high school in 2017 and was not employed (Id.). He did not have a driver's license because he was unable to pass the learner's test (Id.). He had no history of mental health treatment (Id.). He reported that he went grocery shopping with his mother, helped with laundry, helped to empty the lawn mower bag, helped with dishes, and took care of his dog (Tr. at 518). He went out to eat twice a week on weekends, attended church on Sundays, and went to the movies (Id.). He used the phone to talk and text, he had one close friend, and he visited family (Id.). He was independent in his personal grooming, he exercised by lifting weights, he liked to watch television, and he enjoyed hunting, fishing, watching basketball and football, and looking at Facebook (Tr. at 519). He believed himself to be capable of managing his own money (Id.).

On a mental status examination, Claimant presented with adequate attire and hygiene; he was cooperative and made eye contact; his speech was understandable and linear; he was well oriented; his mood was euthymic; his affect was broad; his thought processes were logical and coherent; there was no evidence of any obsessions, compulsions, or unusual perceptions; his judgment, insight, and psychomotor behavior were average; his immediate and remote memory were average, and his recent memory was mildly impaired; his concentration was mildly impaired; his persistence was intact; his pace was average; and his social functioning was appropriate (Tr. 517-518).

Claimant achieved a full-scale IQ score of 71, a verbal comprehension score of 80, a perceptual reasoning score of 71, a working memory score of 74, and a processing score of 76 (Tr. at 517). He was able to sit throughout the evaluation and testing process without restless behaviors, he worked at a normal pace, and he demonstrated no frustration and maintained motivation after giving incorrect responses (Id.). He occasionally needed repetition of instructions, but he attempted

every task presented and maintained persistence during the testing portion of the evaluation (Id.). Ms. Marshall diagnosed borderline intellectual functioning (Tr. at 518).

**The Administrative Hearing**

Claimant Testimony:

Claimant testified that he does not have a driver's license because he is afraid to drive and unable to pass the written test; he had taken the test twice in high school and taken driver's education in high school. (Tr. at 39-40) He confirmed that he lived with his parents and a little dog, and helped around the house, doing chores and watch TV. (Tr. at 40, 41) His mother is a housewife and his father worked as a coal miner. (Tr. at 42) He testified that he tried to look for work, at restaurants and stores, had applied online and went to interviews at restaurants, but he was never called back. (Tr. at 40-41)

Lorraine Carter, Claimant's Mother, Testimony:

Mrs. Carter testified that she and her husband adopted Claimant in May 2009. (Tr. at 44) In addition to other medical conditions, she stated that Claimant has learning comprehension problems, and that he has to study harder than other kids but he does not retain what he learns. (Tr. at 45) She stated that he made pretty decent grades when in special education classes, and that he had tutors. (Id.) She testified that when Claimant attended Vo-Tech, his teachers told her that he was doing pretty good, but would forget what he learned and had to start over the next day. (Tr. at 45-46) She testified that Claimant gets frustrated when trying to handle money, such as at a convenience store, and that she was advised by his therapists to not push him too hard, that he needed to learn on his own, at his own pace. (Tr. at 46)

Mrs. Carter confirmed that Claimant has chores around the house, and that he will do

whatever is asked of him, but he must be told to do them; she said charts never help. (Id.) Claimant is unable to multi-task, he needs to focus on one thing at a time. (Tr. at 50)

Mrs. Carter testified that when he was in school, Claimant played the cymbals in band, and "if he didn't' quite hit the cymbal when he was supposed to, they didn't care"; he hung out with the football players, who tended to protect Claimant. (Tr. at 48) Claimant enjoys swimming, fishing and being outside. (Id.) Claimant has lots of friends when he is in school, but preferred the company of adults; he liked his teachers, the coaches, and hanging out with their pastor, the directors at the 4-H. (Tr. at 49) Claimant is active in church; he stays with a family that does mission work every year for a week, as they have a son who is autistic. (Tr. at 49-50)

Vocational Expert ("VE") Testimony:

In response to the ALJ's hypothetical concerning an individual with Claimant's age, education, work experience, and controlling RFC, *supra*, the VE testified that Claimant could perform light exertional jobs including hand packager, housekeeping, and cafeteria attendant; at the sedentary levels, an eyeglass assembler, circuit board tester, and costume jewelry maker. (Tr. at 51-53) In addition, the VE opined that if the individual would require two reminders a day, such as a simple verbal prompt, to stay on task after the initial training period, this would not be consistent with competitive employment, but more along the lines of an accommodation or a supportive employment program. (Tr. at 53) The VE opined further that if the individual were to be off-task in excess of 15% of the workday, then there would be no full time competitive employment. (Tr. at 54)

**Scope of Review**

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence, however, the Court determines if the final decision of the Commissioner is based upon an appropriate application of the law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Further, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." Blalock, 483 F.2d at 775.

**Analysis**

For simplicity's sake, the undersigned considers Claimant's alleged second ground of error first: the parties both observe that Exhibits 1F and 6F were removed from the official transcript, and despite the fact that they are listed under the "List of Exhibits" appended to the written decision, Claimant asserts that the ALJ erroneously relied on this evidence but failed to include them in the transcript. While there is no reference in the ALJ's decision to these exhibits or any indication whatsoever that the ALJ relied upon these exhibits in rendering his decision, the undersigned is at a loss as to why those Exhibits were excluded from the transcript, other than they

supposedly concerned another claimant. (See, Tr. at 328-343, 387-397) It is interesting, however, that during the colloquy between the ALJ and Claimant's counsel, only Exhibit 13F was to be removed from the file, as it concerned another claimant, whereas the ALJ announced during the hearing that Exhibits 1A through F *were admitted* into evidence, with the exception of 13F. (See, Tr. at 36) The undersigned notes from the transcript that Exhibits 1F and 6F concerned records from Clarksville Montgomery County School System, dated September 25, 2003 to April 29, 2005[2], and outpatient hospital records from Vanderbilt University Medical Center, dated June 5, 2012 to October 3, 2017[3], respectively. (See, "Court Transcript Index"; Tr. at 27, 28) This missing record, coupled with Claimant's contention that the ALJ's third step findings and conclusions are not based on substantial evidence, precludes meaningful judicial review, as this Court is "left to guess about how the ALJ arrived at his conclusions", thus necessitating remand. Mascio v. Colvin, 780 F.3d 632, 636-637 (4th Cir. 2015). Accordingly, the undersigned **FINDS** that the final decision is not supported by substantial evidence. The undersigned declines to review the ALJ's third step analysis concerning Claimant's mental impairments for substantial evidence, given the incomplete record before the Court.[4]

---

[2] Exhibit 1F at page 327 of the transcript indicates that the exhibit came from a "Mt Hope Fax" number. But as indicated above, that could be school records from the Clarksville Montgomery County School system. Regardless, the undersigned has no way of knowing what Exhibit 1F was or if it applied to Claimant or not.

[3] It appears to the undersigned that Exhibit 6F beginning at page 384 of the transcript was supposed to be medical records related to Claimant from Vanderbilt University Medical Center. In fact, page 3 of Exhibit 8F, at page 422 of the transcript, references medical records of the claimant from Vanderbilt. Additional references to Vanderbilt University Medical Center records are mentioned under the "Evidence of Record" headings in the Disability Determination Explanation at the initial and reconsideration levels of review (See, Tr. at 59-60, 72-73, 88-89,100-101) However, the undersigned has not reviewed any such records as none were included in the transcript in question.

[4] It is difficult for the undersigned to determine if: A) the correct documents were included as Exhibits 1F and 6F at the time of the hearing and then "incorrect" documents were substituted when the transcript was prepared necessitating the need to redact the "incorrect" documents; or B) the ALJ reviewed "incorrect" documents at the time of the hearing that were related to a different claimant and then subsequently redacted the "incorrect" documents. But in either scenario, it appears that both Exhibit 1F and 6F were supposed to be records that did in fact relate to Claimant. The

**Recommendations for Disposition**

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **GRANT** the Claimant's request for remand (ECF No. 11), **DENY** the Defendant's request to affirm the decision below (ECF No. 12), **REVERSE** the final decision of the Commissioner, and **REMAND** this matter back to the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further administrative proceedings to allow for review of the complete record in light of Claimant's alleged impairments.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Frank W. Volk, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.

---

undersigned has no ability whatsoever to determine if the missing documents would support Claimant's assertions or the Commissioner's assertions in their respective arguments. Because of the inability to meaningfully review the record below due to the exclusion of relevant records, the final decision is not supported by substantial evidence. For the undersigned to review the proceedings below thoroughly and dutifully, there can be no question that reviewing the actual records that applies to this Claimant should, at a minimum, be required of the Commissioner and the Appeals Council before the undersigned can meaningfully determine if an error occurred below.

Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933 (1986); Wright v. Collins, 766 F.2d 841 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Volk, and this Magistrate Judge.

The Clerk of this Court is directed to file this Proposed Findings and Recommendation and to send a copy of same to counsel of record.

ENTER: August 23, 2021.



Omar J. Aboulhosn
United States Magistrate Judge